[PHILADELPHIA, MARCH 30th, 1835.]

### BECKMAN and JOHNSON *against* SHOUSE et al.

#### IN ERROR.

The proprietors of a stage coach were in the practice of carrying for hire parcels of merchandize for persons generally: the parcel being entered in the way bill.
*Held,* 1. That they were common carriers.
  2. That they were not protected from responsibility for the loss of a parcel of goods, by an advertisement " all *baggage* at the risk of the owner ; the word baggage, not including merchandize generally.
In the absence of all proof of the manner of loss, the defendants would be liable as ordinary bailees for hire.  Per ROGERS, J.

IN the Court of Common Pleas of Northampton county, from which the cause was removed to this court by writ of error, this was an action of *assumpsit* instituted by the plaintiffs in error, against the defendants, as common carriers, for not delivering a parcel of the value of fifty-five dollars and eight cents, which the defendants, for hire paid, undertook to carry from Easton, Pennsylvania, to the city of New York.

Upon the trial of the cause, the facts were these. The defendants were proprietors of a line of coaches running between Easton and Elizabethtown, N. J., from whence, by means of boats, the line was continued to the city of New York. They proposed to carry passengers and their baggage to and from Easton and New York; and it was proved that they were accustomed to carry packages and parcels of various descriptions. The plaintiffs were merchants residing in the city of New York. In the month of August, 1829, they sent by the defendants' line to Messrs. *Hummell & Troxsell,* at Easton, a box of dry goods, with permission to return any portion of the contents that might not suit them. The box was delivered to *Hummell & Troxsell,* who upon opening it found one piece of Gros de Naples silk and and two pieces chintz, that were deemed too expensive for the Easton market. These articles were baled and the parcel directed, with the kind of paint generally used for such purposes, to *Beckman & Johnson,* New York. *Hummell* contracted with *Samuel*

(Beckman and Johnson *v.* Shouse et al.)

*Shouse,* one of the defendants, and the agent for the line at Easton, to convey the parcel to New York for an amount of hire which was paid. *Shouse* entered the parcel on the way bill. At this time an allusion was made to the manner in which the package was marked: when *Shouse* took it, some of the paint adhered to his fingers, and he remarked, that it would all be rubbed off before the package arrived in New York; but did not on that account object to receiving it. A few days afterwards a letter from *Beckman & Johnson* was received by *Hummell & Troxsell* informing them that the parcel had not come to hand; which being communicated to *Shouse,* he replied that he had been careful to see the package put aboard the stage, and requested that inquiry concerning it might be made by *Beckman & Johnson,* at a new office of the line in New York; which was done, but no information obtained. *Shouse* on being told of this, said he did not know what to think about it—that the package must be in New York, and soon afterwards advertised the loss of it. The parcel was not at any time delivered to *Beckman & Johnson,* and the defendants refusing to make compensation for the loss of it, this action was instituted.

*George Barnet,* a witness produced by the defendants, testified, that at the time when the package was forwarded, he was principal agent for the line at New York, at which place there were two offices. To one of the offices he attended particularly; to the other occasionally. That he sometimes received the fare from New York to Easton, and out of it paid to the captain of the boat the fare to Elizabeth-town. He then entered on the way-bill the fare from Elizabeth-town to Easton only. Sometimes passengers preferred paying to the captain the boat fare from New York to Elizabeth-town, and to the witness the fare from Elizabeth-town to Easton. That during his agency, with a few exceptions, he went every day in the boat to Elizabeth-town: that usually he made out the way-bills in New York, but never closed them until he arrived at Elizabeth-town. That the box for *Beckman & Johnson,* directed to *Hummell & Troxsell,* was delivered to him in New York, and by him sent from thence in the line. The captain of the boat frequently demanded from the witness payment for the carriage of packages, but was never paid any thing: that the witness received payment for the carriage of them from New York to Easton; but entered them on the way-bill from Elizabeth-town only; and that the line was in the habit of carrying for him packages not belonging to passengers on board. That he always entered them on the way-bill and charged for their carriage what he thought just and right: that he was not at Elizabeth-town when the stage arrived there by which the package from *Hummell & Troxsell* was sent; and that he had not at any time, seen a package of that description at either of the offices in New York.

(Beckman and Johnson *v.* Shouse et al.)

Having been called a second time, it was proposed to prove by the witness, that he had received from one of the defendants a copy of a handbill stating in the usual style the route, fare, advantages, &c. of the line, to which was appended this notice, " *all baggage at the risk of the owners,*"—that he had others like it printed, and posted in all the public houses at New York; and that he sent some of them to Easton. To the admission of which evidence the plaintiffs counsel objected, but the court overruled the objection: the plaintiff's counsel excepted, and the court sealed a bill of exceptions.

Three of the said handbills were · then offered in evidence; the plaintiffs' counsel objected to their admission, but the court overruled the objection and sealed a second bill of exceptions.

The defendants then offered to prove by *William Shouse* and other persons conversant with the subject, 1st. The general understanding of the term " *baggage*" as used in the handbills given in evidence. 2d. That the notice " *all baggage at the risk of the owners,*" is appended to all advertisements of this description, and expressed in the phraseology used in the present instance. To the admission of which evidence, the plaintiffs' counsel objected, on the grounds of its irrelevancy and illegality. The court overruled the objection so far as it regarded the first branch of the proposition, and sustained it as to the second. To which decision of the court an exception was taken by the plaintiffs' counsel, and the court sealed a third bill of exceptions.

Under this decision the following evidence was given.

*William Shouse* testified that he had been engaged in running stages for five or six years to a considerable extent. That he had never conversed with any other persons than stage proprietors about the meaning of the term *"baggage."* All that is carried in the boot of the stage is described as baggage, and so called in travelling all over the union. It is a common expression that there is more baggage than will go in the boot. If an Irishman was put in the boot he would be called baggage.

*William White* testified that he had been engaged in staging fifteen or eighteen years. When the office is full of trunks, boxes, bales and parcels to go by the stage, we call it all *baggage* and so does every body else that he heard talk about it. Bandboxes and every thing that is put into the stage is called *baggage.* It is generally so called by the public.

*Hummell,* who was produced as a witness and testified on behalf of the plaintiffs, on his cross-examination stated that he could read: that he had seen handbills similar to those given in evidence, but did not recollect ever to have read them.

The evidence having been closed, the defendants' counsel requested the court to charge the jury :—

First. That this action cannot be maintained by the present

(Beckman and Johnson *v.* Shouse *at al.*)

plaintiff, with whom the defendant made no contract.  If any action could be maintained, it should be in the name of *William Hummell,* who made the alleged contract, if any were made, with *Samuel Shouse,* and paid the freight of the goods, and in whom alone a right of action against the defendants could rest.

Second.  That if the defendants were common carriers only of passengers, and of baggage or parcels belonging to passengers, they would not, on that ground, be liable as common carriers of merchandize, under other circumstances.

Third.  That if the jury believed that the defendants did not agree to carry the goods in question to New York, but that their concern with the line of stages ceased at Elizabeth-town Point, the plaintiff could not recover in this action.

Fourth.  That the defendants were not bound to deliver the goods in question, to the plaintiffs' store ; and it is incumbent on plaintiff to show clearly, that they made every reasonable search and inquiry, both at New York and Elizabeth-town, for the goods, or they cannot recover. ·

Fifth.  That if public notice were given by the defendants to all persons, that they would not be answerable for articles transported in their stages, of which *William Hummel* had notice, or the means of knowledge, the plaintiffs cannot recover.

Sixth.  That if the jury believe, that the custom of the country is, that stage owners and proprietors, are not liable for loss, in the transportation of articles sent in their stages, the plaintiffs cannot recover.

Seventh.  That if the jury believe that the parcel in question was so badly marked by *William Hummel,* as to be lost in consequence, the plaintiff cannot recover.

After stating the evidence, and the law generally, as applicable to the case, the court gave in charge to the jury, in answer to the first point propounded by the counsel of the defendants: That if the jury should find from the testimony, that the right of property to the goods in question, was never out of the plaintiffs, and that they were sent by the plaintiffs to *Hummel & Troxell,* by the same line of stages, and to be returned if they did not suit, and that they were repacked by *Hummel & Troxell,* and taken by *Hummel* to the house of *Samuel Shouse,* to be sent back to New York, and were delivered to Mr. *Shouse* for that purpose, the suit was well brought in the names of the present plaintiffs.

To the second point, the court answered, that if the defendants were common carriers of persons, and of the baggage belonging to passengers, they would not on that account, be liable, as common carriers of merchandize under other circumstances.  A stage coach for the conveyance of persons, is not, of course, a conveyance for goods and merchandize: a continued practice, however, by the owners of

(Beckman and Johnson *v.* Shouse et al.)

a stage coach, of receiving parcels and packages for carriage, and of carrying them for hire, will make them common carriers.

To the third point, the Court answered for the defendants. The facts were, however, for the jury ; and if they found them as supposed by defendants' counsel, the plaintiff could not recover, because the contract proved would be different from the one set out in the declaration.

To the fourth point. The court answered that the defendants were not bound as carriers, without a special contract for that purpose, or a special custom proved to do so, to deliver the goods in question at the store of the plaintiff. They were bound to deliver them at the termination of the line, and at the usual place of deposit for the stage line, where they would be safe; and at that place, and at that place only, it was the duty of the plaintiff to call for them.

In answer to the fifth point, the Court charged that if the jury should find that the defendants were in the habit of receiving and carrying for *hire*, baggage, luggage, parcels, or packages, by whatever name they might be called, then they were common carrries, and liable, at all events, for all losses not occasioned by the act of God, or the common enemy. Their liability, however, as common carriers, might be restricted by special contract, or limited and restrained by notice given to those persons who employ them; and if notice should be found by the jury, that notice should be considered as part of the contract between the parties. Notice to the agent is, in point of law, notice to the principal: but whether the plaintiffs or their agent had notice, was a question of fact for the jury The publication of notice in the newspapers, or the setting up hand-bills in the stage office, is not sufficient ground for a legal presumption of notice; but the circulation of hand-bills, the setting them up in the stage office where the baggage or packages are received or delivered, the size of the character in which they were printed, the situation in which they were placed,—whether conspicuous or not,—evidence that the party saw them, or could not fail to see them without gross neglect, as well as evidence that the party could read,—are facts and circumstances to be submitted to a jury, and from which they must decide whether notice was given or not. If the party had ample means of knowledge, the jury would be authorized in finding notice. But under *any* notice, fully proved, the carrier would be liable, if the loss of the goods was occasioned by his own gross carelessness, fraud, or misconduct; for the law will not permit him, by notice, to free himself from the obligations of honesty and good faith, nor, from the exercise of ordinary care. Even with notice, stage proprietors, and carriers of goods, would be liable for an injury or loss arising from the insufficiency of coaches, harness, or tackling, from the drunkenness, ignorance, or carelessness of drivers,—from viscious and unmanageable horses,—or when occasioned by over-

(Beckman and Johnson *v.* Shouse et al,)

loading the coaches; as these would all imply negligence or want of care.

The court charged in reference to the position of the counsel of the plaintiffs, that the alleged notice if brought home to them, did not apply to the facts in this case, but was to be confined to *baggage* accompanied by the owner who is a passenger in the stage; that the word baggage had not received a judicial construction, or a fixed legal meaning in this state. Usage and custom ascertain and fix the meaning of words in the country; and in this case, considering the meaning of the *word, baggage,* doubtful, the court admitted parol evidence to show the sense in which the word is used, and how . it is understood as applicable to this cause; and they submitted to the jury to ascertain the meaning of the word baggage, as contained in the handbills, aided by the parol evidence upon that subject, and the definitions read from the dictionaries, from all which they would determine whether the word baggage, as used in this case, was understood as extending to packages sent by the stage, as well as to those accompanying the owner. If it was confined to the luggage of travellers, it would not restrain the general liability of the defendants, as common carriers, in the present suit. If it included packages or parcels sent without the owner, and if such was the sense in which the word is generally used and understood, it should be regarded as entering into the contract in this case, provided they found notice thereof to the plaintiffs, and it would limit the liability of the defendants to losses occasioned by negligence or want of care.

To the sixth point, the Court stated that the liability of stage owners and proprietors was matter of law, if the jury fond that they had become common carriers, by carrying for *hire*, and they were liable for all losses not occasioned by the act of God, or the public enemy, unless that liability was limited by special contract or by notice.

The seventh point was answered for the defendants. To which opinion of the Court, the counsel of the plaintiff excepted.

The following errors were assigned in this Court.

1. The admission of the evidence contained in plaintiffs' first bill of exceptions.

2. The admission of the evidence contained in plaintiffs' second bill of exceptions.

3. The admission of the evidence contained in the third bill of exceptions.

4. The answer of the Court to the third point propounded is not sufficiently clear, as there was no evidence of their concern with the line ceasing at Elizabeth-town Point. The manner in which this subject was left to the jury, was calculated to mislead them.

5. The answer to the fourth point is erroneous, and should have been a negative of the proposition.

(Beckman and Johnson *v.* Shouse et al.)

6. That the charge in relation to the fifth point, and the matters connected therewith, is erroneous.

7. The Court did not answer the sixth point correctly.

8. The Court erred in answering the seventh point.

9. That on the facts in evidence the Court should have charged the jury, that the plaintiffs were entitled to recover.

*C. W. Brooke,* for the plaintiffs in error, considered first the general questions arising out of the charge of the court on the *fifth point,* and forming the sixth error assigned.

That the defendants were common carriers was clear from 2 *Show.* 128.    *Salk.* 282, pl. 11.    1 *Pick.* 56.    1 *Bay,* 99.    But the extent to which their exemption from liability by notice was carried by the court below could not be supported in Pennsylvania.    The common law doctrine of common carriers as understood in the reign of Hen. 8, and previously to that period corresponded with the general principles of bailment.    The carrier was liable only where he had not used ordinary care and diligence.

He then went into an historical view of the law of common carriers, and cited *Coggs* v. *Bernard,* 2 *Ld. Raym.* 909, 918.    2 *Com. on Cont.* 291.    4 *Rob. R.* 348, 352, cited in *Story on Bailm.* 319. *Jones on Bailm.* 103.    *Gordon* v. *Little,* 8 *Serg. & Rawle,* 535. 551. 557.    *Rily* v. *Horne,* 5 *Bingh.* 217.

The modification of their liability by notices is an innovation in the common law, which has been deeply regretted by some of the most learned judges in England.    Lord ELLENBOROUGH in *Nicholson* v. *Willan,* 5 *East,* 513, one of the strongest cases in favour of the notice, assigns as reasons for his decision, the long duration and universality of the practice, and the sanction which the custom had received from parliament—while he admits it to be against the policy of the law, and liable to much abuse and inconvenience.    In the whole range of the English authorities there cannot be found a decision establishing the validity of a notice like that in the present case.    But to whatever extent this exemption by notice may have been carried in the English courts, the subject may be considered as *res integra* in Pennsylvania.    Our courts will doubtless be cautious not to relax the wise and wholesome doctrines of the common law in relation to carriers, nor is it improper to allude to the vast extension of our commerce through our numerous and daily increasing lines of internal improvement as furnishing a reason for strict adherence to the rule of the common law.

If then the notice was nugatory, it follows necessarily that evidence of the publication and circulation of the handbills and of their contents was irrelevant and ought not to have been received.    But granting the notice to be valid, was it brought home to the plaintiffs?    If it be obligatory, it is on the ground of its being a part of the contract, like an usage of trade, and it is well settled that a

usage different from the common law must be strictly proved by the party alleging its existence. *Gordon* v. *Little*, 8 *Serg. & Rawle*, 553. It must be traced conclusively to the knowledge of the plaintiffs. 2 *Stark.* 56. 280. 3 *Bingh.* 2. 2 *Camp.* 415. *Story on Bailm.* 357. Here *Hummel* swears that he did not read the handbill.

Again, conceding the notice to be brought home to the plaintiffs, it cannot in this instance protect the carriers. The term 'baggage' contained in the notice does not embrace a package of goods like that in question.

It is a specific and not a general term which can with no propriety be applied to a package like the one in the present case. The terms of the notice should be clear and explicit. If there is any ambiguity, it will be taken most strictly against the carrier. *Holt.* 317. 2 *Camp.* 108. *Jeremy's Law of Car.* 45 note. This point has been expressly decided in Massachusetts in *Dwight* v. *Brewster*, 1 *Pick.* 54.

The court erred in directing the jury that the defendants were not bound without a special contract or a special custom to that effect, to deliver the goods at the store of the plaintiffs; that they were bound to deliver them at the termination of the line, and at the usual place of deposit, only, where it was the duty of the plaintiffs to call for them. The rule is, that carriers are bound to deliver the goods according to the directions given. 2 *Shower*, 327. 81. 129. 2 *W. Bl.* 916. 3 *T. R.* 399. 3 *Esp. Ca.* 127. 3 *B. & B.* 177. S. C. 6 *Moore*, 469. 4 *Price*, 34. The court charged that the proof of the custom rested on the plaintiffs. The authorities show that the burthen of proof is with the carrier; and in all those cases where the carrier is discharged by making a delivery at a place different from the direction, or short of the place of ultimate destination, it is his duty to give notice to the consignee of the arrival of the goods. 2 *Bl.* 916. *Golding* v. *Manning*, 3 *Wils.* 429. 433.

Again, it is conceived that the court erred in instructing the jury that if they believed the parcel in question was so badly marked by *Hummel* as to be lost in consequence, the plaintiffs could not recover. Now it is no where laid down that it is necessary that the package should be marked. It is not essential to the carrier's liability. A strong analogous case is to be found in 2 *Stark.* 323, in which it is held that if the loss arises from the defect of packing which is *not apparent*, the carrier will not be liable. But if the manner of packing is *apparent*, the carrier by accepting them seems to undertake to carry them safely in the manner they are packed, and consequently will be liable.

*Jones* and *R. M. Brooke*, contra, urged that the defendants were not common carriers of merchandize. Their employment was the transportation of the mail and of passengers, not of goods. A common carrier having convenience cannot refuse to take goods,

(Beckman and Johnson *v.* Shouse et al.)

*B. N. P.* 70, any more than an innkeeper having convenience can turn off a guest.   So a stage proprietor who occupies a public route cannot refuse to take passengers.   But will it be contended that it is actionable in him to refuse to carry a parcel of merchandize? Certainly not.   His undertaking is to carry passengers, not parcels.   In all cases where the stage proprietor has been held liable for parcels, it has been on the special contract and not on the general assumpsit of a common carrier.   No matter what may be the precise quality of the common law liability, it cannot affect or vary the special contract.   If this proposition be correct, then the plaintiffs must fail; because the evidence clearly shows that the special contract in this case was made not with them, but with *Hummel;* and there is no pretence for saying that he was their agent.   The action ought therefore to have been brought in the name of *Hummel.*   The party having the legal interest in the contract must sue.   1 *Ch. Pl.* 3–4; and the right of property makes no difference.

But if the defendants are to be viewed as common carriers, they are absolved from responsibility by the terms of their notice.   There is no strict technical meaning affixed to the term 'baggage.'   It derives its force and extent from common usage and common parlance.   These are therefore to be consulted in order to ascertain its import; and the testimony in the present case shows that it would cover the parcel in question.   They further contended that the *terminus* here was at Elizabeth-town and not at New York, and that consequently there was a variance between the declaration and the proof.   They cited *Story on Bailm.* 353, 354. 357.   *Gibbon* v *Paynton,* 4 *Burr.* 2298.   *Clarke* v. *Grey,* 4 *Esp. N. P. C.* 107. *Boyce* v. *Anderson,* 2 *Peters,* 150.   *Story on Bailm.* 322; and as to showing the usage in order to explain the meaning of the word ' baggage,' 2 *Stark. Ev.* 454.   3 *Id.* 1033.   2 *Phillips on Ins.* 22.

*Porter* replied.

The opinion of the court was delivered by

Rogers, J.—This is an action of *assumpsit,* against the defendants as common carriers, for the loss of a parcel, containing one piece of silk, and two pieces of chintz, which the defendants, proprietors of the New York line of coaches, received in Easton, and undertook, but failed to deliver, at New York.   The plaintiffs proved the delivery of the parcel to the defendants, and an undertaking, on their part for a certain stipulated sum, to deliver it at New York.   The defendants contend, that they were not common carriers, and if they were, their responsibility was limited.

That the defendants were common carriers, and liable as such, cannot, I think, admit of question.   A common carrier has been defined to be one who undertakes for hire and reward, to transport goods, of such as choose to employ him from place to place; and

(Beckman and Johnson *v.* Shouse et al.)

they are generally of two descriptions, carriers by land and carriers by water. It is unnecessary to say any thing of the latter description, but the former are the proprietors of stage wagons, and stage coaches, &c. which ply between different places, and carry passengers and goods for hire. In addition to the regular business of the company, the defendants were in the continued practice of transporting parcels and packages at a liberal compensation, whenever offered, the parcel being marked on the way-bill, so as to direct the attention of the agents along the line to it, with a view to its security and safety. It is true, that it is not every person, who undertakes to carry goods for hire, that is a common carrier. A private person may contract with another for the carriage of his goods, and incur no responsibility beyond that of any ordinary bailee for hire, that is to say, the responsibility of ordinary diligence. But here the defendants pursued the business as a public employment, and undertook to carry goods for persons generally. They held themselves out, as ready to engage in the transportation of goods for hire, as a business, and not as a mere casual occupation, *pro hac vice.* This at least, is the fair import of the testimony. If the defendants were common carriers of persons, and of the baggage belonging to passengers, they would not on that account be liable as common carriers of merchandize. A stage coach for the conveyance of persons, is not of course a conveyance for goods; but a continual practice, such as has been proved by the owners of a stage coach, of receiving parcels and packages for carriage, and of carrying them, for hire, will make them common carriers.

If the defendants stand in this relation, they are liable for all losses not occasioned by the act of God, or the common enemy, unless the responsibility which the law casts upon them, is limited by special contract or by notice, brought home to the plaintiffs or their agent; and this brings me to the second and most material part of the case. The principal business of the defendants consists as appears from advertisements, in the carriage of passengers in which is necessarily included, the baggage intended for the personal convenience of the traveller. The advertisements are " cheap travelling ;" cheap travelling, in which the rate for passengers, but not for parcels is stated, and to this is appended, a N. B. " all baggage at the risk of the owner." It is insisted that the N. B. limits the responsibility of the carrier, not only as regards baggage, strictly so called under the eye and supervision of the owner, but that it includes also, goods and merchandize of whatever description, even when placed under the exclusive care and superintendance of the carrier. This is a doctrine to which we cannot accede. If the defendants wished to be so understood, it is certainly not unreasonable to require something more *explicit,* than that which is contained in the handbills, on which they rely. The meaning of the word baggage, taken in consideration with the advertisement, is the effects of a traveller,

(Beckman and Johnson *v.* Shouse et al.)

and this signification has been attached to it in a case very like the present, decided by the Supreme Court of Massachusetts. *Dwight & al.* v. *Brewster,* 1 *Pick.* 50. In the case cited it is ruled that the practice of conveying for hire in a stage coach, parcels not belonging to passengers, constitutes the proprietors of the coach common carriers: and that in an advertisement stating the route, fare, &c. the clause, ' all baggage at the risk of the owners,' did not apply to such parcels. It manifestly applies to the baggage of passengers, it being in the same advertisement, which states the route, the fare, &c. The clause was intended to guard the proprietors from liability in case the trunks &c. were stolen, without any fault on the part of the owner of the stage or their agents.

It was formerly a question of much doubt, how far common carriers, on land, could by contract limit their responsibility. But that they have the power seems now to be settled, although, many learned judges have expressed some regret that the validity of *notices* restricting their liability, was ever recognised. But although this must now be admitted, yet, they cannot by any special notice, or agreement free themselves from *all* responsibility, particularly where there is gross negligence or fraud, nor in a case like this from the exercise of ordinary care. When a common carrier claims an exemption from the responsibility, which the rule of law casts upon him, on the plea of special notice, it is not affording him a hard measure of justice, to require that not only the notice should be brought home to the employer, but also that the terms of the notice should be clear and explicit, and not liable to the charge of ambiguity or doubt. But on the supposition that the defendants are not common carriers, but ordinary bailees for hire, the cause may be viewed in another aspect. The defendants undertook for a certain sum, to transport the parcel to New York, and this as already stated, they have failed to do. It is surely then, necessary for them to show why they have not performed the contract. In the absence of all proof of loss, they lay themselves open to the imputation, that the property is still in their possession, or in the possession of their agents, or has been embezzled by them. And in either case, it is clear that they are liable to the plaintiffs. I have looked though the testimony for some account of these goods. All we know, is that they were received by the defendant's agent, who undertook to convey them to New York, and for some reason, they never reached their place of destination. Less than positive proof would suffice, but some account should be given, from which the jury would be warranted to infer, that the goods had been either discharged, or had been lost by accident, or had gone into other hands, than the defendant's or his agents. Here the parcel was booked and put on the way-bill, and if mislaid, there must have been some negligence on the part of some of the agents along the line. If the parcel did not arrive at a particular point, it was the duty of the agent, to make inquiry, and

(Beckman and Johnson *v.* Shouse et al.)

ascertain the reason it had not arrived; and if this had been done, we should not now be in doubt, whether the package had been mislaid, or embezzled, and possibly we would then have known, when and where, and how the loss had occurred. It is true, that where a loss has been proved, ordinary care in the carrier is presumed, and the *onus* is thrown upon the plaintiff, but all a plaintiff has to do, in the first instance, is to prove the contract, and the delivery of goods, and this throws the burthen of proof, that the goods were lost on the carrier. And this is a salutary principle, for otherwise, owners and employers, would be at the mercy of bailees, who would rely on a failure to perform the contract, as a complete indemnity against the suit of the bailors. I cannot see how, in the absence of any proof, as to the manner the loss occurred, the plaintiffs can do more than to rely on the fact of the non-delivery of the goods, as evidence of want of ordinary care, on the part of the carriers, or their agents.

Since the above remarks were written, the case of *Beardslee* v. *Richardson,* 11 *Wend.* 25, has been put into my hands, in which the same opinion is intimated. It was the case of a sealed package of the value of one hundred dollars, which the defendant as bailee, without reward, undertook to deliver. It was held that the defendant was liable for gross neglect only; and whether he was guilty of any neglect, did not sufficiently appear, from the testimony. That it did not appear that any demand was made or application of any kind, until the suit was brought. That the plaintiff was bound to show that the money was lost by the defendant's negligence, or could not be obtained on request. On this ground, and because the suit was for money had and received, the plaintiff failed in his action. But says Chief Justice SAVAGE, "had he shown a demand and refusal, the defendant, I think, would have been bound to account for the loss, and to indemnify the plaintiffs, unless he could show the property lost, without fault on his part, that is, without gross negligence."

With the exception of the principles above indicated, we concur with the judgment of the court of Common Pleas.

Judgment reversed, and a *venire de novo* awarded.