## Leonard *versus* Hendrickson.

1. The owners of a steamboat employed *in towing boats* are not common carriers.
2. The captain of a steamboat took in tow a raft of logs to be conveyed to a mill on the Monongahela river; the river rising so as to prevent the progress of the boat and tow, with the assent of one of the owners of the raft, it was fastened to the shore, and the steamboat left the place. The raft was carried adrift. It was *Held*, that the owners of the steamboat were not *common carriers*, and *the want of skill and care* on the part of the captain of the boat not being alleged, the owners of the boat were not liable for the value of the raft.

ERROR to the District Court of *Allegheny county*.

This was an action on the case by William J. Leonard and Francis M'Clure, partners, &c., *v.* James Hendrickson and others, owners of the steamboat Peytona, for the value of certain timber, which was carried adrift from a place where it had been fastened, on account of a rise in the river Monongahela, after having been taken in tow by the captain of the steamboat. The defendants pleaded not guilty, with leave, &c. Oct. 18, 1849, verdict rendered for the plaintiffs for $275, subject to the opinion of the Court. Nov. 17, 1849, HEPBURN, J., observed that "the plaintiffs have put their case exclusively on the ground of the defendants being *common carriers ;* hence the question of want of due care did not arise, nor indeed from the evidence could it have arisen in the cause. If the defendants were not liable as *common carriers*, it is plain they are not liable at all." Being of opinion that they were not common carriers, he directed judgment to be entered in favor of defendants *non obstante veredicto*.

See the opinion of CHAMBERS, J., for a statement of the material facts in the case.

[Leonard v. Hendrickson.]

*Geyer*, for plaintiff in error.—In favor of the position that the defendants were common carriers, reference was made to 1 *Louisiana Rep.* 340; 11 *Id.*.46; 14 *Pickering*, 1; the case of Vanderslice *v.* The Steam Towboat Superior, in Admiralty; Philadelphia, *Law Journal*, Feb. 1850, opinion of KANE, J.

A common carrier will not be discharged if the owner merely accompany his goods, without exercising control over them: *Story on Bailments*, sec. 578.

*Woods*, for defendants, referred to *Smith's Mercantile Law*, 273; 52 *Eng. Com. Law Rep.* 879; 34 *Id.* 355; 1 *Id.* 25; 1 *Salk.* 282; 2 *Comstock*, 207.

The opinion of the Court was delivered, Sept. 15, 1851, by

CHAMBERS, J.—The defendants were the owners of the steamboat Peytona, the usual employment of which was towing boats, rafts, &c., on the Monongahela river. The plaintiffs were the owners of a raft of logs lying near the mouth of the Allegheny, and the defendants contracted to tow said raft to the saw-mill of the plaintiffs, at Braddock's Field, on the Monongahela. In pursuance of the agreement, the defendant's boat was attached to the raft, and they proceeded with it a part of the distance up the river, when the farther progress of the same was arrested by a sudden rise in the river; and they were compelled, with the assent of one of the plaintiffs, to tie up the raft at the shore. The river continued to rise during the night, and the raft was carried off by the water, and only part of it recovered by the plaintiffs.

The plaintiffs have placed their claim exclusively on the ground of the defendants being common carriers; and the question of want of skill, care, and attention by the defendants, does not arise. The question of the liability as common carriers of those engaged in the business of towing boats, rafts, &c., is one of great importance to the public, as well as those engaged in this business, which gives much employment to capital and labor on the western and eastern waters of this Commonwealth.

A common carrier is in the nature of an insurer; and if he carries without any qualification of his liability, he becomes an insurer against all but tempest, and the public enemy; he insures against fire, theft, robbery, and the fraud of his own servants. His vigilance and faultlessness do not excuse him. It is the policy of the law to impose such responsibility on a common carrier, as one intrusted with the property and goods of others, and of which he and his agents and servants have the exclusive possession and control. It is reasonable that he should be thus held liable, to prevent collusion, and make him answerable for the honesty, attention, care, and skill of the servants whom he chooses and employs. The owner of goods and property committed to a common carrier rarely

[Leonard *v.* Hendrickson.]

accompanies them; and if he does, has neither possession nor control.

The conduct of the carrier and his servants not being under the view and direction of the owner, he would seldom be able to prove the cause of the loss of his property. To prevent the necessity of going into circumstances impossible to be unravelled, the law presumes against common carriers, unless they can show the loss was caused by the public enemy, or such acts as could not happen by the intervention of man, as lightning and tempest: 2 *Kent's C.* 602–3. The reason of the law is that the owner of goods lost would never be able to prove the cause of the loss. His witnesses must be the carrier's servants: *Sto. Bail.* 491. The law of liability of common carriers is one of public policy, and is to be maintained. Does this policy extend to the towing of boats and rafts on navigable or other waters? This exercise of power is peculiar and limited. It is generally for short distances, under the eye and observation of the owner, who may and often does accompany, by himself or his agents, the property that is towed for him. If there is peril from the sudden rise of the water, or other unforeseen danger, he may terminate the conveyance at any point of safety in his opinion. The cargo on a canal-boat towed is property in the care of the conductors of such boat as common carriers, of which they have the exclusive possession, and for which they are responsible, knowing its value and quality. The captain or owner of a boat undertaking to tow a loaded canal-boat, we presume, neither inspects the cargo, or overhauls it. His contract has reference to size, tonnage, and obstruction, to which the power of his boat is to be applied; and the connection of his boat, by the chain or rope, with the vessel and rafts to be conveyed to a fixed point, is the limited control he has over the property thus transported.

It was an apt illustration of the learned judge who delivered the opinion of the Court below, in saying, "wherein does this case differ in principle from that of a railroad company, or the state furnishing locomotive engines for drawing the cars of individuals over the road? The application of steam-power to towing boats, &c., is only distinguishable from horse-power where it can be used, in the extent of the power. Would it be pretended that the man who furnished horses and a driver, to tow a boat or raft, was an insurer as a common carrier for the boat to be towed and its contents? We do not think that public policy and security require the extension of the law of common carriers to those engaged in the towing of boats, rafts, &c."

We are not aware that this question has before been presented to this Court for its decision.

The liability of carriers has in some instances been modified in the Courts, from the particular position and relation of the parties. A stage-coach owner who carries passengers only, is not, properly

[*Leonard v. Hendrickson.*]

speaking, a common carrier; he does not warrant the safety of the passengers at all events, but only that so far as human care and foresight will go, he will provide for their safe conveyance: *Smith's Mercantile Law* 273. Nor are the proprietors of a stage-coach, used for the conveyance of passengers, liable as common carriers for goods sent by such coach: Beckman *v.* Shouse, 5 *Rawle* 179. But if they have been in the practice of receiving and carrying for hire, in such coach, parcels of merchandise for persons not passengers therein, they are responsible as carriers in relation to such goods: *Ib.* Nor is a town carman, not plying between certain *termini*, but undertaking casual jobs: Brend *v.* Dale, 8 *Carr. & Payne* 207; though by this Court, a farmer who applied to the plaintiff for the hauling of goods in a wagon to the place where the plaintiff resided, was held liable for the loss of certain goods on the road: Gordon *v.* Hutchison, 1 *W. & Ser.* 285. The common law responsibility of a carrier may be limited and lessened by agreement, but the exceptions will be strictly interpreted, and it is the duty of a carrier to bring his case clearly within them: Atwood *v.* Reliance Co., 9 *Watts* 88; Bingham *v.* Rogers, 6 *W. & Ser.* 500; Laing *v.* Calder, 8 *Barr* 479.

But such carriers cannot by any special notice free themselves from all responsibility, particularly when there is gross negligence and fraud, nor from the exercise of ordinary care: Beckman *v.* Shouse, 5 *Rawle* 179.

On the question of the liability of steamboat owners in towing boats, there are conflicting decisions in some of the states. In Louisiana it has been held in the Courts, that they were liable as common carriers: 1 *Louis. R.* 349; Smith *v.* Pierce, 11 *Louis. R.* 46.

In New York a different rule of liability has prevailed, as reported in Caton *v.* Rumney, 13 *Wend.* 387, and Alexander *v.* Green, 3 *Hill* 9, where it was decided that those who tow boats and vessels were not common carriers of the things towed; and though the judgment in Alexander *v.* Green was reversed by the Court of Errors of New York, as reported in 7 *Hill* 533, yet upon what principle of law, cannot be learned from the opinions delivered; and in a more recent case in the Court of Errors of that state, as now constituted, and more entitled to regard for opinion in matter of law, it has been decided that the owners of a steamboat, employed in the business of towing boats for hire, are not common carriers: Wells *v.* Steam Navigation Co., 2 *Comstock's R.* 207. By this adjudication the rule, as laid down in 13 *Wend.* 387, and 3 *Hill* 9, is adopted and established, and the case in error in 7 *Hill* 533, declared to be of no authority.

There is no question that such bailees may contract for either a larger or more restricted liability than would be implied against them in the absence of a special contract.

[Leonard *v.* Hendrickson.]

In *Story on Bailments,* sec. 496, it is said by that learned jurist, that the law of liability of the owners of steamboats who undertake to tow vessels, is such as had been established by the adjudications in New York, and that they are responsible only for ordinary skill, care, and diligence in their undertaking. The law is stated with the same limitation by *Angell on the Law of Carriers,* sec. 86.

The weight of authority and opinion is in favor of the views of this Court, that the defendants were not liable as common carriers, and is in support of the learned and able opinion of the Court below.

Although the owners of steamboats towing canal-boats, or other boats and rafts, are not liable as common carriers with their responsibility, yet they are bound to use such a reasonable degree of care and attention that the owner of the boat or raft towed shall incur no damage or loss through the negligence or default of the owner of such steamboat or of his servants.

In the opinion of this Court, there is no error in the opinion and judgment of the Court below, and the same is affirmed.