# Gordon *against* Hutchinson.

A wagoner who carries goods for hire, thereby contracts the responsibility of a common carrier, whether transportation be his principal and direct business, or an occasional and incidental employment.

ERROR to the Common Pleas of *Centre* county.

This was an action on the case by James B. Hutchinson against James Gordon. The defendant pleaded *non assumpsit*.

The facts were that the defendant, being a farmer, applied at the store of the plaintiff for the hauling of goods from Lewistown to Bellefonte, upon his return from the former place, where he was going with a load of iron. He received an order and loaded the goods. On the way the head came out of a hogshead of molasses, and it was wholly lost. In this action the plaintiff claimed to recover the price of it. There was much proof on the subject of the occasion of the loss: whether it was in consequence of expansion of the molasses from heat, or of negligence on the part of the wagoner, of which there was strong evidence.

The defendant took the ground that he was not subject to the responsibilities of a common carrier, but only answerable for

negligence, inasmuch as he was only employed occasionally to carry for hire. But the court below (Woodward, President) instructed the jury, that the defendant was answerable upon the principles which govern the liabilities of a common carrier.

*Blanchard,* for plaintiff in error, argued the same point here, and cited in support of it 2 *Kent's Com.* 597 ; *Story on Bail.* 298 ; 2 *Lord Raym.* 909 ; 2 *Marsh* 293 ; *Jones on Bail.* 306 ; 5 *Rawle* 188 ; 1 *Wend.* 272 ; *Leigh N. P.* 507 ; 2 *Salk.* 249 ; 2 *Bos. & Pul.* 417 ; 4 *Taunt.* 787.

*Hale,* for defendant in error, cited 4 *N. Ham.* 306 ; *Bul. N. P.* 7 ; 1 *Salk.* 282 ; 1 *Wils.* 281 ; *Story on Bail.* 325 ; 2 *Watts* 443.

The opinion of the Court was delivered by

GIBSON, C. J.—The best definition of a common carrier in its application to the business of this country, is that which Mr Jeremy (*Law of Carriers* 4) has taken from *Gisbourn* v. *Hurst,* (1 *Salk.* 249) which was the case of one who was at first not thought to be a common carrier only because he had, *for some small time before,* brought cheese to London, and taken such goods as he could get to carry back into the country at a reasonable price ; but the goods having been distrained for the rent of a barn into which he had put his wagon for safe keeping, it was finally resolved that any man undertaking to carry the goods of *all persons indifferently,* is, as to exemption from distress, a common carrier. Mr Justice Story has cited this case (*Commentaries on Bailm.* 322) to prove that a common carrier is one who holds himself out as ready to engage in the transportation of goods for hire *as a business,* and not as a casual occupation *pro hac vice.* My conclusion from it is different. I take it a wagoner who carries goods for hire is a common carrier, whether transportation be his principal and direct business, or an occasional and incidental employment. It is true the court went no further than to say the wagoner was a common carrier as to the privilege of exemption from distress ; but his contract was held not to be a private undertaking as the court was at first inclined to consider it, but a public engagement by reason of his readiness to carry for any one who would employ him, without regard to his other avocations, and he would consequently not only be entitled to the privileges, but be subject to the responsibilities of a common carrier : indeed they are correlative, and there is no reason why he should enjoy the one without being burthened with the other. Chancellor Kent (2 *Commentaries* 597) states the law on the authority of *Robinson* v. *Dunmore,* (2 *Bos. & Pul.* 416) to be that a carrier for hire *in a particular case,* not exercising the business of a *common* carrier, is answerable only for ordinary neglect, unless he assume the risk of a common carrier by express contract ; and

[Gordon v. Hutchinson.]

Mr Justice Story (*Com. on Bail.* 298) as well as the learned annotator on Sir William Jones's Essay (*Law of Bailm.* 103 d. *note* 3) does the same on the authority of the same case. There, however, the defendant was held liable on a special contract of warranty, that the goods should go safe; and it was therefore not material whether he was a general carrier or not. The judges, indeed, said that he was not a common carrier, but one who had put himself in the case of a common carrier by his agreement; yet even a common carrier may restrict his responsibility by a special acceptance of the goods, and may also make himself answerable by a special agreement as well as on the custom. The question of carrier or not, therefore, did not necessarily enter into the inquiry, and we cannot suppose the judges gave it their principal attention.

But rules which have received their form from the business of a people whose occupations are definite, regular, and fixed, must be applied with much caution and no little qualification to the business of a people whose occupations are vague, desultory, and irregular. In England, one who holds himself out as a general carrier is bound to take employment at the current price; but it will not be thought that he is bound to do so here. Nothing was more common formerly, than for the wagoners to lie by in Philadelphia for a rise of wages. In England the obligation to carry at request upon the carrier's particular route, is the criterion of the profession, but it is certainly not so with us. In Pennsylvania, we had no carriers exclusively between particular places, before the establishment of our public lines of transportation; and according to the English principle we could have had no common carriers, for it was not pretended that a wagoner could be compelled to load for any part of the continent. But the policy of holding him answerable as an insurer was more obviously dictated by the solitary and mountainous regions through which his course for the most part lay, than it is by the frequented thoroughfares of England. / But the Pennsylvania wagoner was not always such even by profession. No inconsiderable part of the transportation was done by the farmers of the interior, who took their produce to Philadelphia, and procured return loads for the retail merchants of the neighbouring towns; and many of them passed by their homes with loads to Pittsburg or Wheeling, the principal points of embarkation on the Ohio. But no one supposed they were not responsible as common carriers; and they always compensated losses as such. They presented themselves as applicants for employment to those who could give it; and were not distinguishable in their appearance, or in the equipment of their teams from carriers by profession. I can readily understand why a carpenter, encouraged by an employer to undertake the job of a cabinetmaker, shall not be bound to bring the skill of a workman to the execution of it; or why a farmer, taking his horses

from the plough to turn teamster at the solicitation of his neighbour, shall be answerable for nothing less than good faith; but I am unable to understand why a wagoner soliciting the employment of a common carrier, shall be prevented by the nature of any other employment he may sometimes follow, from contracting the responsibility of one. What has a merchant to do with the private business of those who publicly solicit employment from him? They offer themselves to him as competent to perform the service required, and in the absence of express reservation, they contract to perform it on the usual terms, and under the usual responsibility. Now, what is the case here? The defendant is a farmer, but has occasionally done jobs as a carrier. That, however, is immaterial. He applied for the transportation of these goods as a matter of business, and consequently on the usual conditions. His agency was not sought in consequence of a special confidence reposed in him—there was nothing special in the case —on the contrary, the employment was sought by himself, and there is nothing to show that it was given on terms of diminished responsibility. There was evidence of negligence before the jury; but independent of that, we are of opinion that he is liable as an insurer.

Judgment affirmed.