## Rose, Appellant, *v.* Beaver County.

*Constitutional law—Title of act—General and local legislation—Poor law.*
The Act of June 4, 1879, P. L. 78, entitled "An act to create poor districts, and to authorize the purchase of land and erection of buildings to furnish relief and give employment to the destitute, poor and paupers in this commonwealth," is not unconstitutional. Its title is sufficient, and it is general in its application, as it relates to every county within the commonwealth. It is not a valid objection to the generality of the act that it excepts cities and that the city of Philadelphia and county of Philadelphia are coextensive; nor does the provision leaving the question of the purchase of real estate to the vote of the people affect the generality of the act, since the act is operative in all counties, irrespective of the vote of the people. Frost v. Cherry, 122 Pa. 417, distinguished.

Argued March 13, 1902. Appeal, No. 112, April T., 1902, by plaintiffs, from decree of C. P. Beaver Co., March T., 1902, No. 4, on bill in equity in case of Jacob A. Rose et al. v. Beaver County et al. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity for an injunction. Before WILLSON, P. J. The opinion of the Superior Court states the case.

*Error assigned* was the decree of the court.

*R. S. Holt* and *D. A. Nelson*, with them *Roger Cope* and *D. M. Twiford*, for appellant.—The act of 1879 is unconstitutional: Road in Boro. of Phœnixville, 109 Pa. 44; Sewickley Borough v. Sholes, 118 Pa. 165; Ridge Ave. Pass. Ry. Co. v. Phila., 124 Pa. 219; Phila. v. Ridge Ave. Pass. Ry. Co., 142 Pa. 484; Quinn v. Cumberland County, 162 Pa. 55; Baker v. The County of Warner, 11 Pa. Superior Ct. 170; Frost v. Cherry, 122 Pa. 417; Montgomery v. Com., 91 Pa. 125; Straub v. Pittsburg, 138 Pa. 356; Jenks Twp. v. Sheffield Twp., 135 Pa. 400; Appeal of the City of Scranton School District, 113 Pa. 176; Commonwealth v. Patton, 88 Pa. 258; Morrison v. Bachert, 112 Pa. 322; Commonwealth v. Denworth, 145 Pa. 172; Scowden's Appeal, 96 Pa. 422; Wilkes-Barre v. Meyers, 113 Pa. 395; Ayars's App., 122 Pa. 266; Perkins v. Philadelphia, 156 Pa. 554.

*J. F. Reed*, with him *Ellis N. Bigger* and *Edwin S. Weyand*, for appellee.

OPINION BY BEAVER, J., April 21, 1902:

In pursuance of the provisions of the Act of assembly of March 29, 1851, P. L. 260, the commissioners named therein purchased a tract of land upon which buildings for the accommodation of the poor of Beaver county were subsequently erected, title to which was taken in the name of "The Directors of the Poor and of the House of Employment for the County of Beaver."

The 4th section of the said act provided: "That the said directors, as soon as may be after their election and organization as aforesaid, shall make an estimate of the probable expense of purchasing the lands and buildings, or erecting the necessary building or buildings, and furnishing the same and maintaining the poor in said county for one year; whereupon the county commissioners of the said county shall, and they are hereby authorized and required to increase the county tax by one-fourth part of the sum necessary for the purpose aforesaid; and shall procure on loan, on the credit of the taxes herein directed to be levied, the remaining threefourths thereof, to be paid in instalments with interest out of the county taxes; provided always, that if such loan cannot be made, the whole amount of the sum necessary for the purpose aforesaid, or such part thereof as may be deemed proper, shall immediately be added to the county tax, to be paid by the county treasurer to the directors aforesaid, on orders drawn in their favor by the county commissioners, as the same may be found necessary."

By the 2d section of an Act of assembly, approved April 3, 1852, P. L. 280, it was provided: "That the time specified in the 1st section of the act of the 29th of March one thousand eight hundred and fifty-one, authorizing the erection of a house for the employment and support of the poor in the county of Beaver, for the commissioners therein named to carry out the provisions of the said act, in making a purchase of real estate for the purposes therein mentioned, shall be extended to the first day of January A. D. one thousand eight hundred and fifty-three, and that the said commissioners

are hereby required to meet and organize on or before the first Monday of July next and proceed to make such purchase as is required in said act and make report to the county commissioners in writing, signed by a majority of them, on or before the first Monday in October next. Said report shall set forth a full description of said property as to quantity, price and terms of payment."

By the 3d section of the same act it was provided: " That the said county commissioners are hereby authorized and required to make provision for the payment of said property, as required in the 4th section of the act to which this is a supplement." This latter act is not repealed in terms by the Act of May 15, 1901, P. L. 193.

The poor of the county of Beaver were maintained under the provisions of the act of 1851 and its supplements, until the first Monday of January, 1902, when, by virtue of the Act of May 15, 1901, P. L. 193, supra, repealing the said Act of March 29, 1851, and all other special acts relating to the poor of Beaver county, except the act of 1852, supra, the provisions of the said act ceased to apply. It will be observed that, although the title to the real estate purchased under the act of 1851 vested in the directors of the poor provided for in the said act; the money necessary to purchase land and erect buildings and maintain the poor was raised by an additional general tax levied upon the whole county by the county commissioners. The property, therefore, belonged to the county at large as fully, to all intents and purposes, as if the title thereto had been made to the county in its corporate capacity.

In view of the prospective operation of the repealing act, the plaintiffs, citizens and taxpayers of the county of Beaver, filed a bill in equity in which the county of Beaver and the county commissioners of said county were named as defendants, and in which, after setting forth the essential facts hereinbefore recited, prayed: First. " That, by an injunction, preliminary until hearing and perpetual thereafter, the said defendants be restrained from entering into and taking possession of said poorhouse and the tract of land upon which it is located." Second. " That, by an injunction, preliminary until hearing and perpetual thereafter, the said defendants be restrained from levying, assessing or collecting any tax or

sum of money upon or from the taxable inhabitants and property, or either, of said county of Beaver, and from making any appropriations or expending any of the public funds of said county for the maintenance, relief, support and employment of the poor of said county of Beaver at said poorhouse or elsewhere." Other prayers asked for an injunction, restraining the defendants from employing superintendent and other employees for the poorhouse, making contracts for the maintenance or employment of the poor and the issuing of warrants, bonds, orders, obligations or other evidences of indebtedness relating to the maintenance, care and support of the poor of Beaver county, etc.

The plaintiffs contend that, by virtue of the repeal of the special acts relating to the care of the poor of Beaver county, their care and maintenance was relegated to the several poor districts of the county, under and in pursuance of the Act of June 13, 1836, P. L. 539. The defendants, on the other hand, contend that the provisions of the Act of June 4, 1879, P. L. 78, entitled an act "to create poor districts and to authorize purchase of lands and erection of buildings, to furnish relief and give employment to the destitute poor and paupers of this commonwealth," apply. Under section 11 of the latter act it is made the duty of the county commissioners "from time to time to receive, maintain, provide for and employ all paupers, poor and indigent persons within their district entitled to relief and having a settlement therein. The duties heretofore performed by overseers of poor within such districts shall be done and performed by said commissioners, with the same rights and subject to the same penalties." The provisions of this act, under which the county of Beaver is a single poor district, undoubtedly give the commissioners authority to do and perform all the several acts in reference to the maintenance and employment of the poor, from the performance of which the plaintiffs' bill asks to have them enjoined and restrained, and this seems to be conceded by the plaintiffs, unless, as they claim, the said act is unconstitutional. The constitutionality of the Act of June 4, 1879, P. L. 78, is, therefore, the question which, under various phases, constitutes the real bone of contention in the case. It is assailed by the plaintiffs on three several grounds: First, that the title is defective. Second, that it is local and

special, (*a*) in that it requires, under the 3d and 4th sections thereof, a vote of the qualified electors of each county to determine whether or not it shall have a poorhouse, (*b*) in that, it provides in section 20 that " when any county embraces within its limits an incorporated city, such city and the territory embraced within it shall not be included in such poor district and such city shall not be in any way affected by this law, but all the other parts of such county shall in such cases compose the poor district of that county."

The question of the constitutionality of the act does not seem to have been argued in the court below, the court remarking in its opinion, "The court has not had the benefit of the argument of counsel in passing upon this question and, when the bill was presented, the act of 1879 was not considered by either side." The objection to the title seems to have been raised in the mind of the plaintiffs still later, as is shown by the fact that the argument in relation thereto is contained in an insert in the argument. The question, however, is of such importance that we waive all technicalities and consider the question as if it had been properly argued in the court below and duly presented here.

1. As to the title. In Com. v. Lloyd, 2 Pa. Superior Ct. 6, the subject of the sufficiency of the title of an act of assembly was very fully considered and all our cases to that date carefully analyzed and, as a result, it was there stated that " it is not necessary that the title of an act should be a complete index of its contents."

" If the title fairly give notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary." The title of this bill is general but it is comprehensive. It does not descend to details but no one interested in the general subject of the formation of poor districts, the purchase of lands and the erection of buildings and the furnishing of relief and giving employment to the destitute poor would not have such general notice as to lead him to make inquiry into the body of the bill. There is nothing in the bill which does not relate to the general subject outlined in the title. The opinion of Mr. Justice MITCHELL in Sugar Notch Borough, 192 Pa. 349, applies in many respects to all the questions raised in this case. It is there said : " It must

not be lost sight of that the attitude of courts is not one of hostility to acts whose constitutionality is attacked. On the contrary, all the presumptions are in their favor and courts are not to be astute in finding or sustaining objections. The evil at which the constitution was aimed is thus stated with great clearness by the present chief justice in Road in Phœnixville Boro., 109 Pa. 44: "The design and scope of this constitutional amendment adopted in 1864 are readily understood when we consider the mischief which it was intended to remedy. Prior to that date the vicious practice had obtained of incorporating in one bill a variety of distinct and independent subjects of legislation. The real purpose of the bill was often, and sometimes intentionally, disguised by a misleading title or covered by the all comprehensive phrase 'and for other purposes,' with which the title of many omnibus bills concluded. Members of the legislature, as well as the general public, were thus misled or kept in ignorance as to the true character of proposed legislation. This being the evil intended to be remedied, the constitutional requirement as to the title is not to be strained to apply to cases not really within its reasonable intent." See also Com. v. Gilligan, 195 Pa. 504.

2. The objection to the bill that it is not general in its application is not well founded. It relates to every county within the commonwealth. It is true that it excepts cities from its operation, but if the legislature has power to legislate for the government of cities and provide affirmative legislation for their peculiar needs and not only so, but to legislate for the several classes of cities, how much more should it have power to except cities in general from the operation of laws which are not applicable to their peculiar needs? Nor is the objection a valid one, that, because the city of Philadelphia and the county of Philadelphia are coextensive and the law excepts cities from its operation, that it is, therefore, local. If, for any reason, the boundaries of the city of Philadelphia should be reduced, so as not to be identical with the boundaries of the county, or, if the boundaries of the county were enlarged, so as to extend beyond the present limits of the city, the law would apply to it as well as to the other counties.

3. There is no similarity between this act and that of June 23, 1885, P. L. 142, relating to the repeal of section 1 of the fence

law of 1700, 1 Sm. L. 13. The law itself in that case was not to become effective within the limits of any county, unless so determined by a vote of the people, and inasmuch as the vote might be in favor of the repeal in one county, and against it in another, the operation of the law would become local and it was so held in Frost v. Cherry, 122 Pa. 417; but in this case it is not the question of the operation of the law which is left to a vote of the people, but simply the question of the purchase of real estate under its provisions, the law remaining in force within the county, whether the vote be for or against the purchase of such real estate.

The county of Beaver having already purchased property, and created buildings necessary for the care and maintenance of their poor, no vote of the people in regard to the purchase thereof was necessary. The property belonged to the county, notwithstanding the fact that the title is in " the directors of the poor and of the house of employment for the county of Beaver" instead of " Beaver county poor district," as provided in the act of 1879. The property was purchased by the levy of a general tax and each individual citizen is as much interested in the property in the one case as in the other.

The machinery of the law for the maintenance of the poor is practically the same under the act of 1879 as under that of 1851. In the one case the directors furnished the estimates upon which the county commissioners levied the tax; while in the other, the machinery for carrying out the provisions of the law is entirely within the hands of the county commissioners and is thereby simplified and the expenses of administration presumably reduced.

We attach no importance to the fact that the Act of April 3, 1852, P. L. 280, is not repealed in terms by the act of 1901. It was simply a prop to the act of 1851, in order to continue the time within which the provisions of that act could be carried into effect. When the building fell, the prop has no significance.

The act of 1879 has been twice under consideration in the Supreme Court: first, in Jenks Twp. v. Sheffield Twp., 135 Pa. 400, and second, in Straub v. Pittsburgh, 138 Pa. 356. It has been in operation for more than twenty years. These facts should count in its favor, for as was said in Sugar Notch

Borough, 192 Pa. 349, " It is rather late now to question it. While these circumstances are not conclusive in its favor, yet they are a strong argument that it is not so plainly repugnant to the constitution as it must be to require a court to overturn an act of the legislature."

Viewing this case from every point of view, we can see nothing objectionable in the decree of the court dismissing the plaintiffs' bill. It is, therefore affirmed, and the appeal dismissed at the costs of the appellants.