# Blakiston, Appellant, *v*. Davies, Turner & Company.

*Sale—Delivery—Intention—Carriers—Case for jury—Forwarders— Pleading—Allegata and probata.*

1. If it appears from a contract of sale that delivery is to take place at a distant place and that the title is to remain in the consignor until that place is reached, delivery to the carrier does not divest title of the vendor in the property, nor pass it to the purchaser until it reaches its destination, and the hazards of transportation are at the risk of the consignor. If in such a case the facts as to where the property is to be delivered are not in dispute, the question as to when the title passes is for the court, but if the evidence is conflicting or if a different inference may be drawn from the undisputed facts, the question is one for the jury. If the title does not pass until delivery at the destination, and the goods are lost in transport, the consignor may sue the carrier in his own name.

2. Where a statement of claim alleges that the defendant is a common carrier, the defendant cannot relieve himself from liability, if it is in fact a common carrier, by inserting in its bill of lading a clause to the effect that it shall be held liable only as a forwarder.

3. To constitute a common carrier it is not essential that the person or corporation undertaking such service own the means of transportation.

4. Where a company claiming to be a forwarding company only accepts goods to be delivered in a distant country and has the goods hauled by its hired truckman to a railroad, and the goods are to be delivered to the company's delivery agents in the place of destination to be delivered finally to the consignee, and the goods are not delivered

according to the contract, there is sufficient evidence to show that the company was in fact a common carrier, and if it is so described in the statement of claim there is no fatal variance between the allegata and probata.

Argued Oct. 7, 1909. Appeal, No. 56, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1904, No. 393, on verdict for defendant in case of Kenneth M. Blakiston, trading as P. Blakiston's Son & Co. v. Davies, Turner & Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Appeal from judgment of magistrate. Before McMICHAEL, P. J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendants.

*C. W. Conard,* of *Conard & Middleton,* for appellant.—If the vendor should sell goods, undertaking to make the delivery himself at a distant place, thus assuming the risk of the carriage, the carrier is the agent of the vendor: Hutchinson on Carriers, secs. 1306, 1320; Hand v. Baynes, 4 Whart. 204; Ry. Co. v. Guano, 103 Ga. 590 (30 S. E. Repr. 555); Grogan v. Adams Express Co., 114 Pa. 523; Griffith v. Ingledew, 6 S. & R. 429; Dannemiller v. Kirkpatrick, 201 Pa. 218.

There was no variance: Penna. Fire Ins. Co. v. Dougherty, 102 Pa. 568; Crotzer v. Russel, 9 S. & R. 78; Geddis v. Irvine, 5 Pa. 508.

The plaintiff contends that the defendant is a common carrier within the meaning of the law fixing its liability as to shipments of goods: Beckman v. Shouse, 5 Rawle, 179; Lumber Co. v. Peoples Coal Co., 26 Pa. Superior Ct. 575; Bank of Kentucky v. Adams Express Co., 93 U. S. 174; American Express Co. v. Sands, 55 Pa. 140; Grogan v. Adams Express Co., 114 Pa. 523; Gulliver v. Adams Express Co., 38 Ill. 504; Mather v. American Exp. Co., 138

Mass. 55; U. S. v. Pacific Exp. Co., 15 Fed. Repr. 867; Christenson v. American Exp. Co., 15 Minn. 270; Read v. Spaulding, 5 Bosworth, 395; Southern Exp. Co. v. McVeigh, 20 Gratt, 264; Buckland v. Adams Exp. Co., 97 Mass. 124; New Jersey Steam Nav. Co. v. Merchants' Bank, 47 U. S. 344; Bank of Ky. v. Adams Exp., 93 U. S. 174.

But, even as a "forwarder" the question should have been submitted to the jury in this case, whether or not there was negligence on the part of the defendant: Hoeveller v. Myers, 158 Pa. 461; Woodruff v. Painter, 150 Pa. 91; Shenk v. Propeller Co., 60 Pa. 109; Verner v. Sweitzer, 32 Pa. 208; Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297; Lamb v. Irwin, 69 Pa. 436; Grambs v. Lynch, 20 W. N. C. 376.

*C. Bradford Fraley*, with him *Henry N. Paul, Jr.*, for appellees.—Defendant is not a common carrier and is not liable as such: Cownie Glove Co. v. Merchants' Dispatch Transp. Co., 106 Northwestern Repr. 749; American Express Co. v. Second Nat. Bank, 69 Pa. 394; Penna. R. R. Co. v. Raiordon, 119 Pa. 577; Davenport v. R. R. Co., 10 Pa. Superior Ct. 47; Farnham v. R. R. Co., 55 Pa. 53; Patterson v. Clyde, 67 Pa. 500.

The right of action was in the consignee alone: Morberger v. Hackenberg, 13 S. & R. 26; Dannemiller v. Kirkpatrick, 201 Pa. 218; Frank Bros. & Co. v. R. R. Co., 9 Pa. Superior Ct. 129; P. & R. R. R. Co. v. Wireman, 88 Pa. 264; Bacharach v. Chester Freight Line, 133 Pa. 414.

OPINION BY RICE, P. J., April 18, 1910:

This action was brought in the name of William C. Lyon to the use of Kenneth M. Blakiston, trading as P. Blakiston's Son & Co. Before the jury was sworn the record was amended by striking out the name of William C. Lyon and retaining the name of Kenneth M. Blakiston as legal plaintiff. The form of action was assumpsit, and the cause of action declared upon was the breach of a contract, of which the following shipping receipt issued by the defendant, a corporation, to the present legal plaintiff was a material part:

" (Not Negotiable)                          Aug. 4, 1902.
    "Received of P. Blakiston's Son & Co.
        " (1) One Box of books.
"Marked—            .
    "W. C. Lyon, 200 Judd Bldg., Honolulu.
    "For shipment per............or other steamer.
    "Value $52.00............for which we charge..........
"Hawaiian Territory."            .

The blank spaces are as they appear in the copy of the receipt attached to the affidavit of defense. Then follow certain pertinent clauses, the material parts of which we quote:

"It is part of the consideration of this contract, and it is agreed that the said Davies, Turner & Co. are forwarders only and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be by said Davies, Turner & Co. intrusted, or for any loss arising at any time from the dangers of railroads, ocean or river navigation, . . . . or from any cause whatever, whether arising from the negligence of servants or employees or otherwise, unless in every case, the same is proved to have occurred from the fraud or negligence of said Davies, Turner & Co."

"And if the same is intrusted or delivered to any express company, railroad, vessel or other carrier, whether named in this receipt or not (which said Davies, Turner & Co. are hereby authorized to do, subject to all the usual conditions of transportation of such carrier), such company or person so selected shall be regarded exclusively as the agent to the shipper or owner, and as such, alone liable, and Davies, Turner & Co. shall not be, in any event, responsible for the negligence or nonperformance of such company or person."

On the trial of the case the plaintiff gave evidence tending to establish the following facts: The plaintiff was a publisher of books in Philadelphia. W. C. Lyon was a bookseller in Honolulu. Lyon ordered from the plaintiff, by letter, seven sets of a medical work of several volumes, to be delivered

to Lyon in Honolulu, without other directions as to the mode of sending them than that they should be forwarded the quickest way. On August 4, 1902, plaintiff delivered the box of books to the defendant marked as stated in the shipping receipt, paid the freight charges to Honolulu and mailed to Lyon a bill for the price of the books together with the freight charges and cost of packing, and a duplicate of the shipping receipt. The usual time of transit from Philadelphia to Honolulu for goods shipped by freight was from twenty-five to forty days. The package was not delivered to Lyon, but was delivered by mistake to the Honolulu Library, and, unconditional delivery of it to Lyon was not tendered until February, 1903, when he refused to accept it. In the meantime, the plaintiff, at his request, mailed to Lyon seven other sets of the same books, which were received by Lyon about December 15, 1902.

The first question to be considered is, whether the consignor could maintain the action as legal plaintiff. In the foregoing statement we have said that the books were ordered to be delivered to Lyon in Honolulu. The letter containing the order was not produced, but the plaintiff's shipper testified without objection, that the books were to be so delivered, and while the effect of his testimony on this point was weakened by his cross-examination, it was not wholly destroyed. The subsequent conduct of the parties was in harmony with the contention, that, in the intention of plaintiff and Lyon, the books were to be delivered to the latter in Honolulu. In one of the most recent Pennsylvania cases upon the subject it is said to be well settled that in the absence of an agreement to the contrary, when a vendor sells goods to a vendee residing at a distance, a delivery of the goods to a carrier for transportation is a delivery to the purchaser; and especially is this true when a bill of lading naming the purchaser as consignee is transmitted to and received by the purchaser: Dannemiller v. Kirkpatrick, 201 Pa. 218. This doctrine is relied on by appellee's counsel but it should be noted that the same case is authority for the proposition, that if it is the intention of the parties, and it so appears from the contract,

that delivery is to take place at the destination of the property, and that the title is to remain in the consignor until that time, then delivery to the carrier does not divest the title of the vendor to the property, nor pass it to the purchaser, until it reaches its destination, and the hazards of transportation are at the risk of the consignor. "It, therefore, becomes a question in cases of this character as to where the delivery of the goods is to be made and when the title is to pass to the purchaser. If the facts are not in dispute it is a question of law for the court, but if the evidence is conflicting," and, we add, if different inferences may be drawn from the undisputed facts, "the question must be determined by the jury." This distinction is well illustrated by a comparison of the case of Griffith v. Ingledew, 6 S. & R. 429, and Hand v. Baynes, 4 Whart. 204. In the latter case, after pointing out that the former case was decided on the ground that the bill of lading vested the legal property in the consignee, and that for the purpose of deciding the legal property, the court would look to the face of the bill of lading, Justice ROGERS went on to say: "But this is not a bill of lading but a contract between the consignor and the carrier, and in actions against common carriers, the general principle is, that the right of action is attached to the property." And in conclusion he said: "But in cases where the right of property is not divested, the consignor can maintain a suit, for he is the person who has sustained the loss, if any, by the negligence of the carrier; and whoever has sustained the loss is the proper party to call for compensation, from the person by whom he has been injured." One of the rules laid down in Hutchinson on Carriers, which is well supported by principle and authority is, that when the risk of safe transportation of the goods is upon the consignor, he will be considered as the owner for the purpose of maintaining an action against the carrier for their loss or injury: 3 Hutchinson on Carriers (3d ed), secs. 1318–1320. We are of opinion that, while binding directions either way upon the question of the right of the consignor to maintain the action would not have been justified under the evidence, there was sufficient evidence to warrant a jury in finding

facts that would entitle the consignor to maintain the action in his own name, if it is maintainable at all.

Next to be considered is the question of variance. The substance of the allegations of the statement of claim relating to this question is that the plaintiff delivered to the defendant, "which is a corporation engaged as a common carrier in the carriage or transportation of goods to the various parts of the world," the box of books in question consigned to W. C. Lyon, to be by the defendant "safely carried and delivered" to W. C. Lyon; that the defendant "undertook to handle the said books and deliver them to the said W. C. Lyon, as provided in said shipping receipt" (which was attached to and made part of the statement of claim); and that the defendant neglected to deliver the box of books to Lyon within the time required by the terms of the shipping receipt, by reason of which the books became worthless and of no value to Lyon. We remark in passing that the evidence tends to show that they also became pecuniarily worthless to the plaintiff, or any one else, by reason of a new edition having been issued before the offer was made by the defendant to return them to the plaintiff. The reasons stated by the learned trial judge for giving binding directions for the defendant, were first, that there was a variance because the plaintiff had alleged but failed to prove that the defendant was a common carrier; second, that even if the statement were amended so as to charge, or could be construed as charging, neglect or failure to perform its undertaking to forward, there was no evidence to sustain the allegations.

In Bank of Kentucky v. Adams Express Co., 93 U. S. 174, STRONG, J., said "We have already remarked that the defendants were common carriers. They were not the less such because they had stipulated for a more restricted liability than would have been theirs had their receipt contained only a contract to carry and deliver. What they were is to be determined by the nature of their business, not by the contracts they made respecting the liability that should attend it. Having taken up the occupation, its fixed legal character could not be thrown off by any declaration or stipulation that

they should not be considered such carriers." In view of this principle it becomes important to inquire whether under the evidence a finding of a jury that the defendant. was engaged in the business of a common carrier, could be sustained. "A common carrier has been defined to be one who undertakes for hire and reward to transport goods of such as choose to employ him from place to place:" Beckman v. Shouse, 5 Rawle, 179. This is the definition given by Chief Justice PARKER in Dwight v. Brewster, 18 Mass. 50, and is said to be the one usually adopted in this country: 1 Hutchinson on Carriers (3d ed.), sec. 47, note. In Gordon v. Hutchinson, 1 W. & S. 285, Chief Justice GIBSON said that the best definition of a common carrier in its application to the business of this country, was that taken from Gisbourn v. Hurst, 1 Salk. 249, where he is said to be any man undertaking for hire to carry the goods of all persons indifferently. To constitute a common carrier, it is not essential that the person or corporation undertaking such service own the means of transportation. This is well illustrated by the Express Company cases cited in the appellant's brief, which cases likewise hold that the mere assumption of the name of forwarders by such companies and the insertion in the bills of lading and shipping receipts issued by them, of a clause that the company shall be held liable only as a forwarder, will not relieve the company from liability as a carrier. As has been well said, the law, regardless of forms or names, will look at the nature of the business in determining whether it is that of a common carrier. It would unduly prolong this opinion to quote the entire testimony of the defendant's general manager, and its manager in Philadelphia, as to the nature of the business conducted by it, but viewing their testimony in the light of the principles above referred to, it is not so clear to us as it seems to be to the learned trial judge and the appellee's counsel, that the court could declare as matter of law that the business was not that of a common carrier.

But, assuming that the evidence was insufficient to sustain the averment that the general business of the defendant was that of a common carrier in the strict sense of the term, does

it necessarily follow that there was a fatal variance between the allegata and the probata? We think not. The averment of the statement of claim, that the defendant undertook to handle the said books and deliver them to W. C. Lyon is qualified by the words "as provided in said shipping receipt." A breach of the contract, thus referred to as being evidenced by the shipping receipt, could be shown without proof that the general business of the defendant was that of a common carrier, and if shown, there was no such substantial variance as ought to defeat the plaintiff. According to the defendant's own showing, the box was called for by its hired truckman, hauled to the railroad and there shipped by rail to New York, consigned to itself, the defendant having placed on the box the additional marks D. T. C., indicating Davies, Turner & Co. On August 24, 1902, it was delivered, according to the defendant's allegations, to the American Steamship Company in New York, to be transported to Honolulu and delivered to W. G. Erwin & Company, delivery agents there. In another portion of the witness's testimony they are spoken of as "the firm which we give business to for the purpose of distribution." It is thus seen that the defendant's duty did not terminate and its control over the package was not surrendered when it was delivered to the steamship company, but the control was retained for the purpose of delivery through its agents in Honolulu to Lyon. At least, this is an inference which fairly may be drawn from the testimony. This being so, we think a jury would have been warranted in inferring negligence from failure to deliver or to tender delivery to Lyon until February, 1903 (if the plaintiff's testimony as to the usual time required for transit from New York to Honolulu is to be believed), and the fact that the package was delivered to the Honolulu Library; and if the jury could infer negligence from these facts, binding directions for the defendant could not be given. The testimony adduced by it to sustain its contention, that the delay in the delivery was due to the mistake of the steamship company was chiefly oral, and as the credibility of the witnesses was involved, the question whether the defendant had accounted for the

delay in such manner as to repel any prima facie presumption or inference of negligence was for the jury under appropriate instructions from the court.

The judgment is reversed and a venire facias de novo awarded.