James, Appellant, v. Public Service Commission.

578

Argued October 8, 1934.

Before TREX-
LER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER and JAMES, JJ.

*Albert C. Hirsch,* and with him *Watson & Freeman,*
for appellant.

*Samuel Graff Miller,* with him *Paul H. Rhoads, E.
Everett Mather, Jr.,* and *John Fox Weiss,* for appellee.

OPINION BY PARKER, J., March 1, 1935:

This is an appeal from an order of the Public Serv-
ice Commission directing Thomas James, Jr., to
"cease and desist from transporting property as a
common carrier 'between points in Pennsylvania,"
and certifying to the Secretary of Revenue the find-
ing of the commission with the numbers of certain
motor vehicles which had been operated as a com-
mon carrier in intrastate commerce in Pennsylvania.

The argument is first made that the use of the word
"companies" in the title to the Public Service Com-
pany Law of 1913 is misleading, and that there is not
sufficient notice of an intention to include individuals
or partnerships among those whose operations are
to be regulated to comply with the constitutional re-
quirements as to titles of acts of assembly. The title,

which is a lengthy one and need not be quoted in full, is in part as follows: "An Act defining public service companies; and providing for their regulation by prescribing and defining their duties and liabilities; prescribing, defining, and limiting their powers, and regulating their incorporation, and, to a limited extent, regulating municipal corporations engaged or about to engage in the business of public service companies; creating and establishing a Public Service Commission for the regulation aforesaid......prescribing penalties, fines, and imprisonment for the violation of the provisions of this act and for the violation of the orders of said commission," etc. Article III, section 3, of the Constitution of this Commonwealth is as follows: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

It is rather odd, if there is any merit in the position of appellant, that this law should have been on the books for twenty years and hundreds of individuals should have applied for certificates and a large number of cases involving individuals should have reached the appellate courts, without this question being raised before. The fact that an act has been in effect for many years unchallenged, while not conclusive, is a strong argument in favor of its validity: Sugar Notch Boro., 192 Pa. 349, 43 A. 985; Rose v. Beaver County, 204 Pa. 372, 379, 54 A. 263. The first clause of the title, however, gives notice that the term "public service companies" is defined in the act, and on reference to the first section we find (66 PS 1): "The term 'Public Service Company,' when used in this act, includes all railroad corporations, canal corporations [twenty-four other classes of corporations], common carriers ......and also all persons engaged for profit in the same kind of business within this Commonwealth,"

This is followed by another definition: "The term 'Person,' as used in this act, means all individuals, partnerships, or associations, other than corporations." We do not know how the definition could have been made more accurate. Both the term "corporations" and the term "companies" appear in the title with a further notice that the act provides for penalties, fines, and imprisonment, yet corporations are not as such subject to all such punishments. All presumptions are in favor of the constitutionality of a statute (Speer v. School Directors, 50 Pa. 150), and courts are not to be astute in finding or sustaining objections to their validity, and all doubt should be resolved in favor of the constitutionality of a statute (Rose v. Beaver County, supra).

Much stress is laid on the argument that the word "company" is frequently used as synonymous with "corporation" and would not in ordinary parlance be taken to include an individual, yet it is a matter of common knowledge that many individuals carry on business under a fictitious name which includes the word "company." In any event, the statute has specifically defined the term as it is to be understood and the title refers to the definition. "In such circumstances definition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others": Fox v. Standard Oil Co. of N. J., 55 U. S. Supreme Ct. Reporter 511. We are of the opinion that the title of the act is sufficient to put any one having an interest in the subject-matter on inquiry, which is all that is necessary: Knowles' Estate, 295 Pa. 571, 580, 145 A. 797.

It is next urged that the appellant is not a common carrier but a private carrier. This necessitates a con-

sideration of the pertinent evidence which is almost exclusively the testimony of the appellant. Thomas James, Jr., began business in 1917 and operated with the use of horses and wagons until 1920 when he substituted automobile trucks as a means of transportation. In 1924 and 1925 he operated eight trucks, but at the time of the hearing was using two trucks and two vans. His business now embraces (1) selling and delivering ice and coal, (2) hauling interstate shipments, (3) long distance intrastate hauling for several firms, and (4) moving and hauling furniture and the like on call and demand in and about the city of Pittsburgh. He made special contracts for hauling for several manufacturers and mercantile establishments, particularly the hauling of pretzels between Reading and Pittsburgh for the Quinlan Pretzel Company and refrigerators for another concern. The commission very properly recognized the right of the appellant to continue his coal and ice business, disavows any claim of authority to interfere with the operations of defendant in respect to interstate shipments, and does not predicate its action on the long distance hauling alone. The evidence elicited from the appellant as to the movement of household goods is to the effect that he was regularly engaged in moving such goods in and about the city of Pittsburgh, moving as many as eleven loads in one day and one hundred loads in a month. In most cases the appellant entered into a written or oral contract in advance, fixing the terms including the price to be charged and the insurance to be furnished. He advertised in the telephone directory and in newspapers. The following are examples of these advertisements: "By Special Contracts Only. Local and Long Distance Moving. Day and Night Service. Private Carrier. Office & Garage 512 Melwood St. Mayflower 0113. Res. Tel. Mayflower 4174. Thomas James, Jr." "Moving,

Hauling, Storage, Unlicensed. Local-Long distance moving, van service by special contract only; estimates cheerfully given. Thomas James, Mayflower 4174.'' On some occasions he declined hauling contracts offered to him.

It is impossible to conclude from appellant's own testimony that the hauling was a mere incident to his coal and ice business and that question is, therefore, removed from the case. The appellant seeks to avoid his duties as a common carrier by reason of his assertion that he only accepted such business as he was fitted to handle and he wished to take, and then only after making a special oral or written contract for the service. He admitted, however, that on a few occasions he hauled furniture without seeing the goods in advance. The following testimony is significant: ''Q. You have never refused anyone who requested interstate service? A. Oh, I have at different times. Q. Because you were too busy or something of that sort? A. Well, for different reasons. Sometimes I could not get together on the price, and different reasons. Q. Would the same reasons apply to the jobs you have refused within Pennsylvania? A. The same reason, if I could not get to see the moving or if we could not get together on the price.'' These admissions, coupled with the advertisements, disclose a clear intention on the part of the appellant to devote his transportation service to indiscriminate use, within the limits of the facilities which he had, by the public for hire.

What we said in Dairymen's Co-operation Sales Association v. P. S. C., 115 Pa. Superior Ct. 100, 107, 174 A. 826, is directly in point: ''In Gordon v. Hutchinson, 1 W. & S. 285, Chief Justice Gibson said that 'any man undertaking to carry the goods of all persons indifferently' is a common carrier. A similar definition and the one usually accepted is that given

by the Chief Justice of Massachusetts in Dwight v. Brewster, 18 Mass. 50: 'A common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place.' This definition has been approved by our Supreme Court in Beckman v. Shouse, 5 Rawle 179, and by this court in Blakiston v. Davies, Turner & Co., 42 Pa. Superior Ct. 390, 397. 'We express a doctrine universally sanctioned when we say, that any one who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier': Lloyd v. Haugh, 223 Pa. 148, 154, 72 A. 516. There are, however, enlargements and limitations of the general terms of these definitions. 'No carrier serves all the public. His customers are limited by place, requirements, ability to pay and other facts. The public does not mean everybody all the time': Piercely v. P. S. C., 73 Pa. Superior Ct. 212, 214. The status of one as a common carrier is not changed by an occasional refusal to perform services for which he is equipped or by the fact that he does not advertise, and the fact that one makes written contracts with his patrons is not controlling in determining that question: Erb v. P. S. C., 93 Superior Ct. 421; Bingaman v. P. S. C., 105 Pa. Superior Ct. 272, 161 A. 892. 'What constitutes a common carrier is a question of law but whether one charged with being a common carrier has by his method of operation brought himself within that definition is a question of fact to be determined from the evidence in each case as it arises': Erb v. P. S. C., supra, p. 429. Mere schemes or devices to avoid the duties and responsibilities of a common carrier are impotent for the purpose intended when the true character of such acts is established: Bingaman v. P. S. C., supra; Davis v. Com., 79 Colo.

642, 247 Pac. 801; Goldsworthy v. Maloy, 141 Md. 674, 119 A. 693.''

The testimony shows not only that the defendant devoted his transportation facilities to the indiscriminate use of the public, but that there was a studied effort to avoid the responsibilities of a common carrier by the mere assertion of the claim that he was a private carrier and would serve whom he pleased. If such schemes were effective, any carrier, not possessing the right of eminent domain, might by this subterfuge evade regulation. The true character of the appellant's operations is to be determined by what he is doing rather than by what he says he is doing. We are all of the opinion that the commission correctly disposed of the matter in holding the appellant was engaged as a common carrier in his operations connected with the moving of household goods. The other operations of the defendant tend to strengthen this conclusion, even though such transactions independently might not have made him a common carrier.

Finally, the appellant complains of the order of the commission certifying to the Secretary of Revenue the fact that Thomas James, Jr., had operated certain motor vehicles as a common carrier without the approval of the Public Service Commission. As was said in Bingaman v. P. S. C., 105 Pa. Superior Ct. 272, 275, 161 A. 892: ''This action was purely administerial under the Act of May 8, 1929, P. L. 1647, Section 1. It would seem that the effort to remedy this wrong, if wrong it be, should be directed against the Secretary of Revenue who suspended the registration, not against the Public Service Commission who merely certified to the illegal operation of the truck.'' Incidentally, however, without deciding the merits of this contention, we call attention to the fact that while the Commonwealth does not have the right to interfere with or place any burdens on interstate commerce, it does have

the right to prescribe reasonable regulations for the use of its highways. The Act of 1929 provides for the *suspension* only of the registrations of motor vehicles and operators' licenses, and we have no doubt that, on receiving proper assurance from the appellant that the cars will not be operated illegally, the Public Service Commission will certify that it has no objection to the rescission of such suspensions and the Secretary of Revenue will reinstate such licenses for the purpose of making lawful use of the public highways.

The order of the Public Service Commission is affirmed.