## Commonwealth v. Benci et al.

*Jack F. Aschinger*, special counsel, for Commonwealth.

*Sidney L. Krawitz*, for defendants.

DAVIS, P. J., May 28, 1949.—The matter comes before the court on appeal of the Commonwealth of Pennsylvania by the Pennsylvania Public Utility Commis-

sion from the dismissal of complaints against Sarah Cerine, Joseph Benci and Naldo Guccini by Lloyd Gumble, justice of the peace in and for Paupack Township, Pike County, Pa. The complaints charged defendants with operating motor boats for compensation without a certificate of public convenience, in violation of the Pennsylvania Public Utility Law.

On the hearing de novo the court, perhaps unwisely, permitted counsel for the Pennsylvania Public Utility Commission and counsel for defendants to stipulate and agree to the facts in lieu of taking testimony, as follows:

"Defendant, Sarah Cerine, operates a motor boat for the transportation of persons on Lake Wallenpaupack, Pike County, Pa., for compensation. The designated transportation is a sight-seeing tour during the summer months, without schedule, call, or demand, and originates and terminates at the same point without service to any intermediate points.

"And it is also agreed that the facts are the same in the cases of Commonwealth v. Joseph Benci and Commonwealth v. Naldo Guccini."

The question before the court is whether the operation of a motor boat as above stipulated constitutes defendants common carriers under the Public Utility Law, thereby requiring them to obtain from the Public Utility Commission certificates of public convenience.

The Public Utility Law of May 28, 1937, P. L. 1053 as amended, 66 PS §1102(5) defines "common carrier" as follows:

" 'Common Carrier' means any and all persons or corporations holding out, offering, or undertaking, directly or indirectly, service for compensation to the public for the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by, through, over, above, or under land, water, or air . . ."

If defendants are common carriers it is not disputed that they come within the definition of "common carrier by motor vehicle" (66 PS §1102(6)), since it is not disputed that a motor boat comes within the definition of "motor vehicle" as defined in the Public Utility Law: 66 PS §1102(14).

In order to sustain these appeals the Commonwealth has the burden of proving beyond a reasonable doubt that defendants were common carriers.

Defendants maintain that the words "between points within this Commonwealth" in the definition of a "common carrier" constitutes a specific requirement that persons or property be carried between at least two points or places, otherwise the terms of the definition have not been met. They point out the sightseeing tour in question originates and terminates at the same point with no service to any intermediate point and, therefore, claim that they are not guilty because they do not come within the statutory definition of "common carrier". The Commonwealth contends that these words were intended only to confine the jurisdiction of the Commission to intrastate commerce.

We will first consider the meaning of the phrase "transportation of passengers or property" as contained in the definition of "common carrier."

The Standard Dictionary of the English language (Funk & Wagnalls) defines "transport" as follows: "To convey or carry from one place to another." This definition is quoted with approval in Columbia Conduit Co. v. Commonwealth, 90 Pa. 307, 309. In Gloucester Ferry Co. v. Commonwealth of Pennsylvania, 114 U. S. 196, Justice Field defined transportation as follows: "Transportation implies the taking up of persons or property at some point and putting them down at another."

In Dairymen's Co-operative Sales Association v. Public Service Commission, 115 Pa. Superior Ct. 100,

107, Judge Parker reviews the definition of "common carrier" as follows:

"In Gordon v. Hutchinson, 1 W. & S. 285, Chief Justice Gibson said that 'any man undertaking to carry the goods of all persons indifferently' is a common carrier. A similar definition and the one usually accepted is that given by the Chief Justice of Massachusetts in Dwight v. Brewster, 18 Mass. 50: 'A common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place.' This definition has been approved by our Supreme Court in Beckman v. Shouse, 5 Rawle 179, and by this court in Blakiston v. Davies, Turner & Co., 42 Pa. Superior Ct. 390, 397. 'We express a doctrine universally sanctioned when we say, that any one who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier': Lloyd v. Haugh, 223 Pa. 148, 154, 72 A. 516."

These authorities lead to the inescapable conclusion that the word "transport" means to convey from place to place, or as indicated by Justice Field, to pick up at some point and put down at another. A scenic ride in a motor boat around the shores of a lake does not come within the basic concept of transportation, that is, of being carried from one place to another.

It follows that the words "between points" in the definition of "common carrier" give expression to the plain meaning of the word "transportation" and when combined with the words "within the Commonwealth" plainly limit the matter under consideration to intrastate commerce.

Under the definition of "common carrier" the word "transportation" applies to passengers and property alike. If we substituted property for persons the folly

of calling this operation "transportation" under the statutory definition of a "common carrier" would be apparent.

However, it is not necessary nor would it be proper, particularly where the guilt of these defendants is concerned, to rest this case on such a narrow proposition. All of the elements which would tend to establish the innocence of these defendants should be considered.

Lake Wallenpaupack is a large inland body of water developed approximately 20 years ago as a storage dam for power purposes. The making of this lake changed the immediate rural farming area into a resort area. Many cottages have been built along its shores, hotels and restaurants have sprung up and boating, bathing, fishing and many other amusements are flourishing in the vicinity. Among the other amusements is the sightseeing tour in question. Thousands of people come to this area during the summer resort season in order to enjoy the facilities offered. The sightseeing tour in question is conducted without schedule, call, or demand. In other words, there is no holding out to the public that any person who will pay the required fee may receive the service. The service is rendered when it suits the convenience of defendants and when there are a sufficient number of persons who desire the service at the same time to make the operation profitable. These are characteristics of private enterprise rather than a public service. It is a venture in the field of amusement rather than in transportation. As stated by counsel for defendants, this operation may be likened to the ageless and popular "tunnel of love" amusement boats.

This is not the first time this question has been raised in the lower courts of the Commonwealth. In Commonwealth v. Cerra et al., 66 D. & C. 96, Judge Robinson in a learned opinion considered the question fully. In that case defendants operated in addition

to a dance hall and various amusements an amphibious motor vehicle known as the "duck" along the shore of Newton Lake, in Lackawanna County. As in the case under consideration no intermediate stops were made and the passengers embarked and disembarked at the same point. In finding defendants not guilty Judge Robinson said, inter alia:

"The legal concept of public service as it is understood in the field of public utility regulation is no more applicable to the operation of the defendants' 'duck' than it is to the carrousel or the hot dog stand. We cannot find that defendants are engaged in public service to the extent that they are holding themselves out as engaged in the business of the transportation and carrying of passengers for hire.

"In Brink's Express Co. v. P. S. C., 117 Pa. Superior Ct. 268 at 276 it was said:

" 'Before appellant's business can come under the supervision of the Commission, it must be clothed with a public interest and affect a substantial part of the community at large: Clark Light & Heat Co. v. Pub. Serv. Com., 84 W. Va. 638, 100 S. E. 551.'

"It has been repeatedly held that where a business is without the sphere of utility regulation as defined by the encompassing provisions of the Public Utility Law, those who operate that business cannot be subjected to its supervision, control and regulation: Toth et al. v. Public Service Commission, 73 Pa. Superior Ct. 217; Harder v. Public Service Commission, 90 Pa. Superior Ct. 373; Aronimink Transportation Co. v. Public Service Commission, 111 Pa. Superior Ct. 414; Dairymen's Co-op. Sales Assn. v. Public Service Commission, 115 Pa. Superior Ct. 100; Brink's Express Co. v. Public Service Commission, 117 Pa. Superior Ct. 268; Weisberger et al. v. Pa. P. U. C. 137 Pa. Superior Ct. 17."

Counsel for the Public Utility Commission seek to distinguish the cases and assert that the Lackawanna County decision is premised on the incidental character of the operations; that the operations were regarded by the court as an incident of a business not itself within the jurisdiction of the commission. We fail to find merit in the distinction. If these defendants operated an amusement park, in addition to the sightseeing tour in question, would that change the character of the operation? We don't think it would. Whether the operator of this sightseeing tour is a private carrier or a common carrier depends upon the operation itself and not on the other business connections of the operator.

We do not consider the case of McBride v. McNally, 243 Pa. 206, urged upon us by counsel for the commission, at all controlling. There is a fundamental difference in character of operation between a river excursion steamboat and a sightseeing tour in a small motor boat on an inland lake. In addition the opinion clearly discloses that the contract was for transportation of persons "between certain indicated points".

"Before appellant's business can come under the supervision of the Commission, it must be clothed with a public interest and affect a substantial part of the community at large: Clark Light & Heat Co. v. Public Service Commission, 84 W. Va. 638, 100 S. E. 551. In so far as the public is concerned, the Commission regulation is designed to secure reasonable rates and adequate service. Where from the nature of the service this becomes impracticable, an attempt at regulation would be an idle gesture. The question of destructive competition is not involved unless the matter arises in connection with the exercise of a public service.

"The Public Service Commission has been rendering valuable service in the regulation of transportation,

but in so doing we should not take a paternalistic attitude by endeavoring to regulate purely private activities which do not involve public service": Brink's Express Co. v. Public Service Commission et al. 117 Pa. Superior Ct., 268, 276.

It appears to us that this "sightseeing tour" is a private activity which does not involve public service and therefore, we enter the following order:

And now, to wit, May 28, 1949, the appeals of the Commonwealth of Pennsylvania by the Pennsylvania Public Utility Commission from the decision of Lloyd Gumble, a justice of the peace in and for Pike County, finding Sarah Cerine, Joseph Benci and Naldo Guccini not guilty of the charge of operating motor boats for compensation without a certificate of public convenience from the Pennsylvania Public Utility Commission are dismissed, costs to be borne by the County of Pike.