## Commonwealth v. Dyer

W. J. Harris, District Attorney, for Commonwealth.

S. Gordon Elkins, for defendant.

SPORKIN, J., September 9, 1963.—The matter comes before the court on a motion to quash an indictment drawn in the language of section 603 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4603, charging defendant, in one count, with unlawfully engaging in gambling for a livelihood and, in the second count, with unlawfully engaging in the habit and practice of gambling, he then being without any fixed residence.

Defendant assigns as the basis for his motion, first that the statute and/or the indictment contravene the Fourteenth Amendment of the Constitution of the United States and article I, sec. 9, of the Constitution of Pennsylvania in that they are too vague and indefinite to inform defendant of the acts prohibited; second, that the same constitutional provisions are violated in that the statute and/or indictment are "so vague, indefinite and over-broad as to proscribe and attempt to punish lawful conduct"; third, that the cited constitutional provisions are contravened by the statute and/or indictment because "defendant was formerly acquitted of violating the Act of June 24, 1939, P. L. 872, section 601, and the facts thereunder may be used to support a conviction in the instant case"[1]; and, fourth, the statute and/or indictment contravene the Fourteenth Amendment and article I, sec. 13, of the Constitution of Pennsylvania in that "they proscribe habitual acts for which a defendant may not be responsible and provide for cruel and unusual punishments."

A motion to quash an indictment is addressed to the judicial discretion of the court and should be sustained

---

[1] The third reason assigned was withdrawn at argument and need not be considered. A motion to quash an indictment based on allegations of extraneous factors should not be sustained: Commonwealth v. Biancone, 175 Pa. Superior Ct. 6 (1954); Commonwealth v. Evans, 190 Pa. Superior Ct. 179, 197 (1959).

only upon the clearest grounds: Commonwealth v. Viscount, 118 Pa. Superior Ct. 595 (1935).

At the outset, it might be well to set forth certain fundamental principles of which we must be mindful in considering the constitutional questions here raised. It has long been axiomatic in this and other jurisdictions that " ' ". . . All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them . . ." ' ": Land Holding Corp. v. Board of Finance and Revenue, 388 Pa. 61, 72 (1957). See also Sablosky v. Messner, 372 Pa. 47 (1952).

An element to be considered also is whether the statute is of recent or early origin; the fact that an act has been in effect for many years during which time it has gone unchallenged, while not conclusive, is a strong argument in favor of its continued validity: James v. Public Service Commission, 116 Pa. Superior Ct. 577, 580 (1935); Harrison's Estate, 250 Pa. 129 (1915). Then, too, the scope of inquiry by an inferior court into questions of constitutionality is of somewhat narrower compass than that of an appellate court. So, it has always been the rule under American constitutional theory, that although inferior courts, including even those of original jurisdiction, have power to pass on the validity of a statute and to declare it unconstitutional in proceedings before them, the exercise of such power should be carefully limited, and avoided if possible: 16 C. J. S. Constitutional Law, §93. See also United States v. Josephson, 74 F. Supp. 958 (1947); United States v. 458.95 Acres of Land, 22 F. Supp. 1017 (1937). Doubtful questions of constitutionality should be left to appellate courts. Moreover, an act may not be declared unconstitutional unless it violates the Constitution " ' " ' . . . clearly, palpably, plainly . . .' " ' ": Land Holding Corp. v. Board of Finance and Revenue, supra.

These strictures, however, must be counterbalanced against the " '. . . preferred place given in our scheme to the great, the indispensable democratic freedoms secured by the First Amendment' ": William Goldman Theatres, Inc. v. Dana, 405 Pa. 83, 87 (1961).

Armed with these tenets, we now come to a consideration of defendant's arguments.

We cannot subscribe to defendant's first contention that the language of the statute here in question is so vague and indefinite as to be violative of due process. In the case of Lanzetta v. New Jersey, 306 U. S. 451 (1939), the United States Supreme Court established the classic test of constitutionality. It was there said, page 453:

" 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement. . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' "

Defendant urges that each of the phrases "gambling for a livelihood", "in the habit and practice of gambling" and "without any fixed residence", as they appear in the statute, fails to meet the requirements set down in the Lanzetta case. In our view, this contention is without merit. The phrases employed are of such fixed and definite meaning in the common parlance of ordinary men that they offer clear notice of the persons and acts who come within the purview of the statute. "Livelihood", as that term is generally understood, means the primary method by which a person earns his living or support. That it may be accompanied by supplemental sources of income or other employment would not, in our opinion, becloud

determination of the question of what constitutes one's livelihood. Thus, we hold that "gambling for a livelihood", encompassing under this construction those persons whose principal means of earning a living is gambling, is a phrase not " '. . . so vague that men of common intelligence must necessarily guess at its meaning.' " Cf. Lanzetta v. New Jersey, supra.

We come to the same conclusion with regard to the phrase "in the habit and practice of gambling." "Habit" is defined by Webster's New International Dictionary, 2d ed., as "a settled tendency of behavior or normal manner of occurrence or procedure." "Practice" by the same authority is declared to be synonymous with "habit". Black's Law Dictionary defines "habit" as "A disposition or condition of the body or mind acquired by custom or a usual repetition of the same act or function." While the cleavage between what does and does not constitute a "settled tendency" in certain isolated instances may be blurred, we hold that the terms "habit" and "practice" as they are understood in the vernacular, provide the necessary precision of language to satisfy the requirements of due process. That the statute's application may not be clear in each and every instance does not change the result. A criminal statute is not unconstitutional because the application of it may be uncertain in exceptional cases: Hygrade Provision Co. v. Sherman, 266 U. S. 497 (1924).

Since language is an imperfect instrument, all legislation, no matter how carefully framed, must inevitably collide with situations not clearly within its ambit. These areas of doubt are for resolution by the courts, not cause for invalidation of the act.

As to the phrase "fixed residence" we do not see how words could be more clear in their intent. "Fixed residence" connotes permanent habitation, a place wherein personal effects and possessions are stored; it is an

address which is appended to one's name on his operator's license, on his Selective Service and other registration cards for the purposes of more certain identification. Moreover, "fixed residence" has long been a term employed and upheld in vagrancy statutes in this Commonwealth, and should not be upset after nearly a century of established usage. See Act of May 8, 1876, P. L. 154, sec. 1, 18 PS §2032.

Defendant argues that the statute on its face would apply to acts committed outside the Commonwealth and is thereby unconstitutional. This would be true if we were to adopt an interpretation consonant with this effect. However, ". . . a construction which is clearly constitutional is to be preferred to one that raises grave constitutional questions": Commonwealth ex rel. Lyons v. Day, 177 Pa. Superior Ct. 392, 398 (1955). See also Statutory Construction Act of May 28, 1937, P. L. 1019, article IV, sec. 52(3), 46 PS §552. We must, therefore, construe the act to apply only to gambling committed within the borders of this state, thus conforming it to the requirements of constitutionality.

We come next to defendant's contention that the statute punishes a "status" and is thereby nugatory. This argument rests upon a misapprehension of the holding in Robinson v. California, 370 U. S. 660 (1962), which defendant cites as support. The State statute which there was struck down attempted to make criminal the "status" of a narcotics addict. A careful reading of the language of the Robinson case leaves no doubt that the fallibility of the statute lay, not in its punishment of a status, but in its attempt to make criminal an illness, thereby constituting cruel and unusual punishment. We need cite only the words of the court, at page 667:

"We hold that a state law which imprisons a person thus afflicted as a criminal, even though he has never

touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment. To be sure, imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual. But the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold."

We find nothing in this language to support defendant's contention that statutes which make status a crime, such as the one we are considering, are now invalidated.

Defendant finally urges that gambling is no less an addiction than use of narcotics and invocation of criminal sanctions would be to impose a cruel and unusual punishment. Again, defendant would extend the Robinson case beyond its intended limits. The court in Robinson had before it extensive medical documentation supporting the concept of narcotics addiction as a disease.[2] Counsel for the State of California even conceded that drug addiction was a physical illness. Defendant here offers no persuasive authority in support of the argument that gambling is an illness, nor are we aware of any such authority.[3] We can discern no peculiarity either in the actor or the act that would differentiate gambling from other criminal behavior. Indeed, to accept defendant's contention would be to expunge by a single stroke the element of culpability from our entire penal law.

---

[2] On the subject of addiction in newborn infants alone six medical treatises were cited.

[3] The articles and works cited represent opinions not accepted, as far as we can determine, as scientific authority by the medical profession.

In view of the foregoing, we conclude that the portion of section 603 of our Penal Code under which defendant was indicted violates neither the Pennsylvania nor the United States Constitution. Accordingly, we entered an order on May 31, 1963, denying the motion to quash the indictment.